# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANIEL MAYET**                                    **CIVIL ACTION**

**VERSUS**                                          **CASE NO. 17-9568**

**ENERGY XXI GIGS SERVICES, L.L.C., et al.**        **SECTION: "G" (2)**

## ORDER

Pending before this Court is Defendants' Energy XXI Services, LLC and Energy XXI GOM, LLC (collectively, "Defendants" or "Energy XXI") "Motion for Summary Judgment."[1] In this litigation, Plaintiff Daniel Mayet ("Plaintiff") alleges that Defendants are liable for a personal injury sustained while working aboard Defendants' mineral exploration and production platform.[2] Accordingly, Plaintiff brings claims under Louisiana State Law, General Maritime Law, and the Outer Continental Shelf Lands Act.[3] In the instant motion, Defendants argue that Plaintiff's claims are barred due to his status as a "borrowed employee."[4] Having considered the motion, the memoranda in support and opposition, oral argument, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 29.

[2] Rec. Doc. 1 at 1.

[3] *Id.* at 2.

[4] Rec. Doc. 29 at 1.

1

# I. Background

## A. Factual Background

This matter arises out of injuries Plaintiff Daniel Mayet ("Plaintiff") allegedly sustained on September 24, 2016 on a mineral exploration and production platform identified as West Delta 31E ("WD 31E").[5] The platform was owned by Defendants.[6] Plaintiff was employed by Wood Group PSN, Inc. ("Wood Group") as lead operator on the platform.[7] Plaintiff had begun working on WD 31E approximately 18 days prior to the date of his alleged injury.[8] Plaintiff alleges that he and other Wood Group employees were using the platform's crane to receive cargo boxes from a vessel.[9] While attempting to place a stinger on the platform's stinger rack, Plaintiff asserts that he sustained a hernia and injury to his back requiring surgery.[10] Plaintiff asserts that the location and configuration of the stinger rack and configuration of platform equipment caused his injuries.[11]

## B. Procedural Background

Plaintiff filed the Complaint on September 25, 2017, bringing claims against Defendants under Louisiana State Law, General Maritime Law, and the Outer Continental Shelf Lands Act.[12]

---

[5] Rec. Doc. 1 at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 2.

[11] *Id.* at 1.

[12] *Id.* at 2.

On February 26, 2018, Plaintiff and Defendants filed a Joint Motion of Dismissal.[13] On March 16, the Court granted the motion and dismissed all Energy XXI entities, except for Energy XXI GOM, L.L.C., owner and operator of the platform, and Energy XXI Services, L.L.C.[14]

On November 19, 2018, Defendants filed the instant Motion for Summary Judgment.[15] On January 8, 2019, Plaintiffs filed an opposition.[16] The Court heard oral argument on the motion on January 16, 2019.[17]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion for Summary Judgment*

In the instant motion, Defendants argue that Plaintiff was a borrowed employee at the time of his alleged accident, and therefore, he has no tort remedy against Defendants, and summary judgment in favor of Defendants is appropriate.[18] Defendants argue that federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, which adopts the law of the adjacent state (Louisiana) as surrogate federal law.[19] Defendants argue that pursuant to OCSLA's mandate, the Longshore & Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §901 et seq., is the law governing an injured offshore worker's

---

[13] Rec. Doc. 16.

[14] Rec. Doc. 18.

[15] Rec. Doc. 29.

[16] Rec. Doc. 39.

[17] Rec. Doc. 40.

[18] Rec. Doc. 29 at 4.

[19] *Id.* at 6 (citing *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)).

compensation benefits.[20] Defendants argue if Plaintiff is the borrowed servant or employee of Defendants, then he is covered by the LHWCA, entitling him to worker's compensation under the Act.[21] Defendants argue that the LHWCA is the exclusive remedy for an employee against his employer, because the LHWCA bars all common law tort actions against the employer.[22] Thus, Defendant argues that Plaintiff's claims are barred because Defendants were Plaintiff's employer.[23]

Defendants allege that Plaintiff is a borrowed employee based on the nine factors the Fifth Circuit has stated courts must consider, although no single factor is determinative:

(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original

---

[20] *Id.*

[21] *Id.*

[22] *Id.* (citing *Melancon v. Amoco Production*, 834 F.2d 1238, 1243-1244 (5th Cir. 1988)).

[23] *Id.*

and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished the tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[24]

Defendants argue that these factors weigh in favor of finding Plaintiff was a borrowed employee for the following reasons. Defendants allege that Plaintiff had worked for Wood Group exclusively on Energy XXI production platforms since February 27, 2002, approximately fourteen years prior to the September 24, 2016 alleged injury for which he seeks damages in this litigation.[25] Defendants allege that during this time, Plaintiff always worked under the authority of an Energy XXI superintendent to whom he reported daily and from whom he took his orders and instructions.[26] Defendant argues that Plaintiff's meals, tools for work, living quarters and transportation to and from Energy XXI's facilities, were provided by Defendants during this fourteen-year period.[27] Defendants argue that they provided the work site at West Delta 31E where

---

[24] *Id.* at 7 (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969)).

[25] *Id.* at 2 (citing Rec. Doc. 29-3 at 19–21, 31).

[26] *Id.* (citing Rec. Doc. 29-3 at 10, 11, 15, 16, 18, 19, 21, 26, 27 and 40–42).

[27] *Id.* (citing Rec. Doc. 29-3 at 24–25, 28–29).

Plaintiff worked when he was allegedly injured.[28]

Defendants claim that Plaintiff's work as lead operator included testing well pressures, preventative maintenance, monthly testing on safety systems, and various other duties related to exploration and production, as instructed by Energy XXI supervisors.[29] Defendants argue that all of the work that Plaintiff performed during the fourteen years was exclusively on Energy XXI platforms for Defendants.[30] Defendants argue that Plaintiff received his safety orientation from Energy XXI on the first day that he arrived in the West Delta field from Energy XXI's person in charge, Charlie James, the superintendent in charge of all platforms in the West Delta field.[31] Defendants argue that pursuant to Bureau of Safety and Environmental Enforcement ("BSEE") rules, Defendants, as lease operators, were required to identify a person in charge ("PIC") for each production facility, and Defendants designated Plaintiff as the person in charge on WD 31E.[32]

Defendants argue that Plaintiff spent between five to seven hours of each workday preparing compliance paperwork and reports for Energy XXI.[33] Defendants claim that Plaintiff testified that he reported to Defendants' superintendent 50-60 times daily about operations at Energy XXI facilities.[34] Defendants argue that Plaintiff submitted his timesheets to Energy XXI's clerk, who processed and provided them to Plaintiff's Energy XXI's superintendent, who would

---

[28] *Id.* (citing Rec. Doc. 29-4 at 43).

[29] *Id.* at 3 (citing Rec. Doc. 29-3 at 9–11, 17).

[30] *Id.* (citing Rec. Doc. 29-3 at 20, 21).

[31] *Id.* (citing Rec. Doc. 29-3 at 32, 33).

[32] *Id.* (citing Rec. Doc. 29-3 at 9–11).

[33] *Id.*

[34] *Id.* (citing Rec. Doc. 29-3 at 40–42).

sign off on the timesheets and return them to the clerk.[35] Defendants claim that then, the clerk

would mail the timesheets to Wood Group, for review by Wood Group's project manager before

sending to Wood Group's payroll department for processing.[36] Defendants claim that Wood

Group then billed Energy XXI for Plaintiff's services.[37] Defendants claim that factors included in

establishing the negotiated hourly rate of Wood Group employees who worked for Energy XXI

were vacation time, the cost of their 401Ks, and insurance, and that Energy XXI paid for any

specialized training it required.[38]

Defendants claim that they determined when, where, and what work was performed by

Plaintiff.[39] Defendants claim that this control included the decision to move Plaintiff from

Defendants' South Timbalier field, where Plaintiff had worked since 2002, to its West Delta field

in 2016.[40] Defendants claim they controlled Plaintiff's work schedule.[41]

Defendants claim that Plaintiff occasionally contacted Wood Group office personnel in

Lafayette to discuss things such as training, time sheet discrepancies, and clothing, but his offshore

work orders and instructions came from Energy XXI's supervisor.[42] Defendants claim, however,

---

[35] *Id.* (citing Rec. Doc. 29-3 at 25–26).

[36] *Id.* (citing Rec. Doc. 29-3 at 25–26).

[37] *Id.* (citing Rec. Doc. 29-4 at 43–44).

[38] *Id.* (citing Rec. Doc. 29-5 at 71, 135–36).

[39] *Id.* at 4.

[40] *Id.* (citing Rec. Doc. 29-3 at 26–28).

[41] *Id.* (citing Rec. Doc. 29-4 at 40–41).

[42] *Id.* (citing Rec. Doc. 29-3 at 11, 15, 17, 18–21, 26, 29).

that Wood Group did not direct or control Plaintiff's offshore work for Defendants.[43]

Defendants claim that if they were dissatisfied with Plaintiff's work, they had the authority to remove him from its facility and discipline or demote him.[44] Additionally, Defendants claim that Plaintiff's payroll employer, Wood Group, expected him to work as directed by Defendants and that there was an understanding between Defendants and Wood Group that production operators employed by Wood Group, such as Plaintiff, worked under the exclusive authority and control of Defendants.[45]

Defendants argue that there are no disputed material facts in support of this motion as the evidence allegedly supporting borrowed servant status was provided by Plaintiff and his nominal employer, Wood Group, in their deposition testimony.[46] Defendants argue that the evidence discussed above supports the factors the Fifth Circuit has considered on the borrowed servant issue, particularly supporting a determination that Energy XXI controlled Plaintiff's work.[47]

**B.**     ***Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

In response, Plaintiff argues that he should not be considered a "borrowed servant" of Defendants and that summary judgment should be denied.[48] Plaintiff claims that Defendants entered into a Master Service Agreement ("MSA') with Wood Group for the operation of its

---

[43] *Id.* (citing Rec. Doc. 29-4 at 41).

[44] *Id.* (citing Rec. Doc. 29-3 at 34).

[45] *Id.* (citing Rec. Doc. 29-4 at 41, 42, 81–86).

[46] *Id.*

[47] *Id.*

[48] Rec. Doc. 39 at 1.

platforms by Wood Group.[49] Plaintiff claims that according to the express language of the MSA, Wood Group and its employees are independent contractors of Defendants, "and that neither Contractor [Wood Group] nor its personnel is a servant, agent or employee of Energy XXI."[50] Plaintiff claims that the MSA goes on to state, "Energy XXI is interested only in the results obtained and has only the general right of inspection and supervision in order to secure the satisfactory completion of any Work."[51] Plaintiff also claims the MSA states that "Contractor shall assign qualified personnel to carry out the Work and ENERGY XXI shall not have the right to control or direct the details of the Work performed by Contractor."[52] Plaintiff argues that this contract shows Defendants did not exercise the requisite control in this case.[53] Further, at oral argument, Plaintiff highlighted language in the contract stating that "any waiver, alteration, or modification of any provisions of this Contract shall not be valid unless in writing and signed by the parties."[54] Beyond disputing the merits of the motion itself, Plaintiff cites multiple cases from the Fifth Circuit where courts denied summary judgment due to a dispute between an employer borrower provision, like the one at issue in this case, and contrary evidence of control in the workplace.[55]

---

[49] *Id.* at 2 (citing 39-2).

[50] *Id.* (citing 39-2 at 1).

[51] *Id.* (citing 39-2 at 1).

[52] *Id.* (citing 39-2 at 1).

[53] *Id.*

[54] *See* Rec. Doc. 39-2 at 11.

[55] Rec. Doc. 39 at 4–5 (internal citations omitted).

Plaintiff further argues that Defendants' employee, Mr. Charlie James, worked alongside Plaintiff and testified that Defendants did not exercise direct control over Plaintiff.[56] Plaintiff claims that Mr. James testified that as a supervisor, he did not instruct the Wood Group employees, including Plaintiff, on a day-to-day basis where they were going to work and what they were going to do.[57] Plaintiff argues that Mr. James' testimony reveals he was not directing Plaintiff's particular activities, and was more concerned with the results than the manner in which the job was done.[58] Plaintiff claims that Mr. James testified that Defendants did not train Wood Group employees.[59] Plaintiff claims that Mr. James further testified that the crane operation Plaintiff was participating in at the time of his injury is not something he played any role in as a supervisor.[60] Finally, Plaintiff states that Mr. James testified that the daily morning meeting was used as a "group discussion" as opposed to him directing Wood Group employees.[61]

## C.   *Defendants' Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendants argue that Plaintiff has "omitted the complete picture of their testimony that supports Energy XXI's motion."[62]  First, Defendants argue that there is no contested issue of fact because Plaintiff did not support objections to Defendants' statements of material fact

---

[56] *Id.* (citing 39-4 at 10).

[57] *Id.* at 3 (citing 39-4 at 23–24).

[58] *Id.* (citing 39-4 at 70).

[59] *Id.* (citing 39-4 at 22).

[60] *Id.* (citing 39-4 at 37).

[61] *Id.* (citing 39-4 at 69–70).

[62] Rec. Doc. 46 at 1.

with evidence.[63] Next, Defendants argue that Plaintiff "cherry-picked snap shot excerpts of testimony from various witnesses."[64] Defendants argue that while they did not control the minute details of Plaintiff's work, the larger picture of the testimony shows that Defendants had high level control of Plaintiff.[65] Finally, Defendants argue that the cases cited by Plaintiff, where courts found a dispute of fact, are distinguishable from the present case because those cases involved individuals subject to the control of multiple parties, whereas here, Defendants allege only Energy XXI had control over Plaintiff.[66]

## III. Legal Standard

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[67] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[68] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[63] *Id.* at 1–5.

[64] *Id.* at 1.

[65] *Id.* at 5–10.

[66] *Id.* at 11.

[67] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[68] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[69]

If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[70] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[71]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[72] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[73] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[74] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[75] Rather, a factual dispute

---

[69] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[70] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[71] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[72] *Celotex*, 477 U.S. at 323.

[73] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[74] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[75] *Little*, 37 F.3d at 1075.

precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[76] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[77] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[78] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[79]

**B.**     ***Legal Standard on the Borrowed Employee Doctrine***

The Parties agree that Plaintiff was injured on the Outer Continental Shelf. Section 1333(b) of the Outer Continental Shelf Lands Act ("OCSLA") incorporates and extends the benefits of the Longshore and Harbor Workers' Compensation Act ("LHWCA") to employees injured on fixed platforms on the Outer Continental Shelf.[80] Under the LHWCA, employees are prevented from bringing tort actions against their employers and their recovery is limited to certain statutorily prescribed compensation benefits.[81] Because a borrowing employer enjoys the same protection as a nominal employer, a "borrowed employee" (also referred to as "borrowed servant") is also barred

---

[76] *Anderson*, 477 U.S. at 248.

[77] *Little*, 37 F.3d at 1075.

[78] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[79] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[80] 43 U.S.C. § 1333(b).

[81] *Melancon v. Amoco Production*, 834 F.2d 1238, 1243-1244 (5th Cir. 1988).

from suing the borrowing employer for anything more than workers' compensation benefits.[82] Thus, if Plaintiff is found to be Defendants' "borrowed employee," then Plaintiff will be barred from suing Defendants in tort.

Although the parties dispute whether Plaintiff was a borrowed employee at the time of his injury, they agree that whether an employee is a borrowed employee constitutes an issue of law for the Court to decide by applying the nine-factor test set forth by the United States Court of Appeals for the Fifth Circuit in *Ruiz v. Shell Oil Co.*[83] The nine factors to consider are:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[84]

---

[82] *Id.*

[83] 413 F.2d 310 (5th Cir. 1969).

[84] *Id.*; *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir.), *reh'g granted on other grounds*, 841 F.2d 572 (5th Cir. 1988).

No single factor, or combination of them, is determinative; although, in many cases, the Fifth Circuit has considered the first factor—control—to be the central factor.[85] The issue of borrowed employee status is a "'matter of law' for the district court to determine," but some cases involve factual disputes on the issue of borrowed employee status and require findings by a fact-finder.[86]

In *Brown v. Union Oil Co. of California*,[87] the Fifth Circuit reversed the district court's decision granting a directed verdict on the borrowed employee issue, finding factual issues required another trial. The plaintiff was injured while working as a roustabout, cleaning drilling mud off one of the defendant's platforms.[88] The plaintiff was employed by a third-party, Gulf Island, who had contracted with the defendant to provide workers for this purpose.[89] The contract purported to prohibit the plaintiff's borrowed employee status.[90] However, the Fifth Circuit noted that such a provision "does not automatically prevent borrowed employee status from arising," and "the parties actions in carrying out a contract can impliedly modify or waive the express provision."[91] The Fifth Circuit recognized that a determination of "[w]hether the parties had an understanding that modified the contract may raise disputed factual issues."[92] Considering that

---

[85] *See, e.g., Melancon*, 834 F.2d at 1245.

[86] *Id.* at 1244–45.

[87] 984 F.2d 674, 676 (5th Cir. 1993).

[88] *Id.*

[89] *Id.*

[90] *Id.* at 677.

[91] *Id.* at 677–78 (citing *Melancon*, 834 F.2d at 1245).

[92] *Id.* at 678.

"the contract provision between the two employers weigh[ed] against borrowed employee status, and the remaining factors [did] not overwhelmingly show that [the plaintiff] was a borrowed employee," the Fifth Circuit remanded the case to the district court for resolution of factual questions including who instructed the plaintiff on how and when to clean the platform and the agreement between the companies regarding borrowed employee status.[93]

In *Alday v. Patterson Truck Line, Inc.*, the Fifth Circuit found that a factual issue precluded summary judgment when a contractual provision regarding "borrowed employee" status conflicted with the conduct of the parties.[94]  In that case, the Fifth Circuit found that "despite [a] factual showing supporting an inference of [the defendant's] supervisory control of [the plaintiff,]" the contractual provisions raised a factual issue as to the plaintiff's status as a borrowed employee.[95] In finding a factual dispute, the Fifth Circuit specifically highlighted language in the contract that "attempted to negate any borrowed employee relationship" between the parties.[96]  The Fifth Circuit also noted that the contract contained a provision attempting to prevent unwritten modification of the contract, which stated that "[n]o waiver of any provision hereof by COMPANY, or Amendment hereto shall be effective unless it is in writing, and expressly refers to this

---

[93] *Id.* at 679 (citing *West v. Kerr–McGee Corp.*, 765 F.2d 526, 531 (5th Cir.1985)); *see also, Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir.), *reh'g granted on other grounds,* 841 F.2d 572 (5th Cir.1988)(holding that a contract provision that purports to prohibit borrowed employee status raises factual issues); *Alday v. Patterson Truck Lines, Inc.*, 750 F.2d 375, 378 (5th Cir. 1985) (reversing summary judgment based upon factual issues concerning contract).

[94] 750 F.2d 375 (5th Cir. 1985).

[95] *Id.* at 377.

[96] *Id.*

Agreement."[97]  In response to these provisions, the Fifth Circuit reversed the district court's order granting summary judgment and stated, "we are unable to say that no factual issue is raised by these contractual provisions, which 'negate' any intention on the part of the employers to establish a borrowed employee relationship."[98]

This Court has also addressed the issue of a borrowed employee at the summary judgment stage multiple times when dealing with similar contractual provisions. In *Robertson v. Blanchard Contractors, Inc.*, the defendant, Blanchard, moved for summary judgment claiming the plaintiff was a borrowed employee.[99]  The plaintiff was working as a scaffold builder on a platform owned by Hilcorp Energy.[100]  Hilcorp hired Blanchard which had in turn subcontracted with Gulf South Scaffolding for the construction of the scaffolding.[101]  Plaintiff was employed by Gulf South.[102]  In denying summary judgment, this Court found disputed issues of material fact existed:

> With respect to the question of whether he is a borrowed employee of Blanchard, Plaintiff has raised a genuine issue of material fact under three of the factors: (1) who had control over the employee; (2) whether there was a meeting of the minds between Blanchard and Gulf South; and (3) whether Gulf South terminated its relationship with Plaintiff. While none of the factors or any specific combination thereof is decisive, Fifth Circuit precedent has recognized the importance of the first two of these in the resolution of the borrowed employee question.[103]

---

[97] *Id.* at 378.

[98] *Id.*; *see also Dugas v. Pelican Construction Company, Inc.,* 481 F.2d 773, 778 (where a similar agreement was held to negate a borrowing employee relationship, under the facts there present).

[99] 2012 WL 6202988, at *1 (E.D. La. Dec. 12, 2012).

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] *Id.* at 13.

In evaluating whether the borrowing employer controlled and directed Plaintiff's work, "a careful distinction must be made between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."[104]

## IV. Analysis

In this case, Defendants argue that they determined when, where, and what work was performed by Plaintiff.[105] However, Plaintiff argues that the testimony of Defendants' employee, Mr. James, a supervisor who worked alongside Plaintiff, demonstrate that Defendants lacked control.[106] Plaintiff points to Mr. James' testimony that as a supervisor, he did not instruct the Wood Group employees, including Plaintiff, on a day-to-day basis where they were going to work and what they were going to do.[107] Plaintiff argues that Mr. James' testimony reveals he was not directing Plaintiff's particular activities, and was more concerned with the results than the manner in which the job was done.[108] Plaintiff also points to Mr. James' testimony that Defendants did not train Wood Group employees.[109] Plaintiff notes that Mr. James further testified that the crane operation Plaintiff was participating in at the time of his injury is not something he played any role

---

[104] *Ruiz*, 413 F.2d at 313.

[105] Rec. Doc. 29-1 at 4.

[106] *Id.* at 3.

[107] *Id.* at 3 (citing 39-5 at 23–24).

[108] *Id.* (citing 39-5 at 70).

[109] *Id.* (citing 39-5 at 22).

in as a supervisor.[110] Finally, Plaintiff points out that Mr. James testified that the daily morning meeting was used as a "group discussion" as opposed to him directing Wood Group employees.[111]

Plaintiff argues that this testimony, coupled with the MSA, creates a disputed issue of fact.[112] Plaintiff notes that according to the express language of the MSA, Wood Group and its employees are independent contractors of Defendants, "and that neither Contractor [Wood Group] nor its personnel is a servant, agent or employee of Energy XXI."[113] Further, Plaintiff points out that the contract contained language stating that "any waiver, alteration, or modification of any provisions of this Contract shall not be valid unless in writing and signed by the parties."[114]

Based on this provision, it would seem that Wood Group maintained control over Plaintiff and that Plaintiff is not a borrowed employee of Defendants. However, Defendants argue that notwithstanding the language of the MSA between Wood Group and Defendants, the actual relationship at the work site between Plaintiff and Defendants evidences an understanding, confirmed by Wood Group, that Defendants had the right to exercise authority and control over Plaintiff.[115] Admittedly, courts have found contract provisions similar to the one at issue here do not prohibit a finding of borrowed servant status where the workplace realities are otherwise. For instance, in *Brown v. Union Oil Co. of California*, the Fifth Circuit faced similar provisions in a

---

[110] *Id.* (citing 39-5 at 37).

[111] *Id.* (citing 39-4 at 69–70).

[112] Rec. Doc. 39 at 4.

[113] Rec. Doc. 39 at 4 (citing Rec. Doc. 39-2 at 1).

[114] *See* Rec. Doc. 39-2 at 11.

[115] Rec. Doc. 29-1 at 23.

contract between lending and borrowing employers that purported to prohibit the plaintiff's borrowed employee status.[116] The Fifth Circuit found that such contract provisions do not automatically prevent borrowed employee status from arising because the parties' actions in carrying out the contract can impliedly modify or waive the express provision.[117] "Whether the parties had an understanding that modified the contract may raise disputed factual issues."[118] The Fifth Circuit held that conflicting evidence regarding whether the parties impliedly modified the contract raised a factual dispute that should be determined by a fact-finder.[119]

The instant case is similar to *Alday v. Patterson Truck Line, Inc.*, where the Fifth Circuit found that a factual issue precluded summary judgment when a contractual provision regarding "borrowed employee" status conflicted with the conduct of the parties.[120] As in *Alday*, the MSA at issue here contains language that attempts to negate a "borrowed employee" relationship and language aimed at restricting modification of the contract.[121] The express language of the MSA states that Wood Group and its employees are independent contractors of Defendants, "and that neither Contractor [Wood Group] nor its personnel is a servant, agent or employee of Energy XXI."[122] Further, the contract contains language stating that "any waiver, alteration, or

---

[116] *Brown v. Union Oil Co. of California*, 984 F.2d 674, 677 (5th Cir. 1993).

[117] *Id*. at 677-78 (citing *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988).

[118] *Id.* (citations omitted).

[119] *Brown*, 984 F.2d at 678.

[120] *See* 702 F.2d 375 (5th Cir. 1985).

[121] *See id.* at 378.

[122] Rec. Doc. 39-2 at 1.

modification of any provisions of this Contract shall not be valid unless in writing and signed by the parties."[123]

Here, based on both the contractual provision laid out above, and the testimony and conduct highlighted by both parties, there is conflicting evidence regarding whether the parties' conduct modified the contract provision purporting to prohibit borrowed employee status and non-written modification.[124] Given the disputes of fact regarding the control the parties exercised and the force of the contract provision at issue, the Court will deny summary judgment at this time. Accordingly, the factual disputes will be resolved by the jury as fact-finder at trial, and then the Court will determine Plaintiff's borrowed employee status as a matter of law.

Based on the foregoing,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment [125] filed by Defendants Energy XXI GOM, LLC and Energy XXI Services, LLC is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 11th day of February, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[123] *See* Rec. Doc. 39-2 at 11.

[124] *Id.* (citations omitted).

[125] Rec. Doc. 29.